2020 PA Super 180

| | | | |
|---|---|---|---|
| B.R.S. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| J.L. | : | No. 1939 MDA 2019 | |

Appeal from the Order Entered October 29, 2019
In the Court of Common Pleas of Berks County
Civil Division at No(s):  19-18051

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

OPINION BY PANELLA, P.J.:                     **FILED JULY 31, 2020**

Appellant, B.R.S., appeals from the order entered in the Berks County Court of Common Pleas dismissing Appellant's petition for protection from abuse ("PFA") for lack of standing. On appeal, we are asked to determine whether a petitioner has standing to seek a PFA order against his wife's sister's husband. We conclude that prior precedent establishes that Appellant has standing, and therefore reverse and remand.

Appellant alleged the incident giving rise to the petition occurred on October 11, 2019, and described the incident as follows.

> I was having lunch when I noticed my sister-in-law come in with her grandson. I thought they were there by themselves and continued to eat lunch. I then noticed her husband, [Appellee] walking along the front windows and he was staring at me in a stalking manner. I noticed my sister-in-law and her grandson leave. I finished my lunch and when I walked outside, [Appellee] was waiting for me. He said, "You're an asshole" and with that gave me a hard push with both hands and then punched me in

the face. I put my hands out to stop more punches. We wrestled a little and fell on the parking lot. He used his thumbs to gouge my eyes. People from Muhlenberg ambulance stopped and pulled us apart. Muhlenberg police came to the scene and a report was filed.

*Id*. at 2. On October 15, 2019, Appellant filed a PFA petition against Appellee, in which he described the relationship of Appellee to Appellant as a "Family Member Related by Marriage or Affinity." Petition for PFA, at 2. The trial court entered a temporary PFA order the same day.

On October 22, 2019, a continued temporary PFA order was entered, and a hearing on the matter was rescheduled to October 29, 2019.

At the hearing, the court heard testimony from Appellant, Appellee's wife, and a witness to the altercation. The testimony corroborated the allegations from the petition. However, the court found that Appellant lacked standing to file a PFA action against Appellee and dismissed the matter and the temporary PFA order without prejudice. This timely appeal followed.

Appellant raises the following issue for our review.

Did the trial court err when it dismissed Appellant's Petition for Protection from Abuse for lack of standing by defining a "family or household member," and more specifically a relation by "affinity," to exclude the relationship of a petitioner to the spouse of petitioner's sister-in-law [in an action] pursuant to the Protection From Abuse Act (23 Pa.C.S.A. 6101, et seq.).

Appellant's Brief, at 5.

Our standard of review regarding an issue of standing under the Protection from Abuse Act is *de novo* and our scope of review is plenary. *See McCance v. McCance*, 908 A.2d 905, 908 (Pa. Super. 2006).

- 2 -

The goal of the Protection from Abuse Act is protection and prevention of further abuse by removing the perpetrator of the abuse from the household and/or from the victim for a period of time. As for individuals who may seek refuge within the confines of the Act, the statute's protective sphere encompasses [] "family or household members." In section 6102 of the Act, the term "family or household members" is defined as,

Spouses or persons who have been spouses, persons living as spouses, parents and children, **other persons related by** consanguinity or **affinity**, current or former sexual or intimate partners or persons who share biological parenthood.

*Id*. (citations and internal quotation marks omitted).

Here, Appellant and Appellee are not spouses, persons living as spouses, related by consanguinity, current or former sexual or intimate partners or persons who share biological parenthood. Consequently, they may only fall under the confines of the PFA Act if we determine they are "persons related by … affinity." *Id*.

The Act itself does not define "affinity." However, a prior panel of this Court faced a similar issue in **McCance**, in which the Court sought to give meaning to all the terms in the PFA statute while preserving its objective. The Court interpreted "affinity" in the Act to include a family relationship of brother-in-law and sister-in-law. The Court specifically found that such an interpretation was consistent with the purpose of the Act, "which is to forestall escalation of disputes among family members where injury may be on the horizon." *Id*. at 910 (citations omitted).

- 3 -

Merriam-Webster includes multiple definitions of "brother-in-law", among which is "the husband of one's spouse's sibling". Merriam–Webster, https://www.merriam-webster.com/dictionary/brother-in-law (last visited July 15, 2020). Similarly, among the definitions of "sister-in-law" is "the wife of one's spouse's sibling". Merriam–Webster, https://www.merriam-webster.com/dictionary/sister-in-law (last visited July 15, 2020). Therefore, we conclude Appellant and Appellee are related by affinity.

To interpret the Act as Appellee would have us do would lead to absurd results. Despite Appellant not being blood related to Appellee, his relationship with Appellee is no different than his relationship with Appellee's wife, who falls under the protection of the Act pursuant to **McCance**. Appellant's testimony regarding holidays, birthdays, and summers spent together, the relationships between the parties' children, and the corresponding relationship between Appellant and Appellee's children, and vice versa, **see** N.T., 10/29/2019, at 14-18, applies equally to Appellee as it does to Appellee's wife.

> [T]he persons who undoubtedly fit the Act's definition of family or household members—*e.g.,* spouses, parents, children, relatives, paramours, and persons who undertake romantic relationships— typically share some significant degree of domestic, familial and/or intimate interdependence. There is often an obvious emotional bond. Frequently, these individuals interface in very practical areas of private life—a mutual residence, common family obligations and/or shared involvement in the affairs of day-to-day living ... In sum, the persons protected by the Act as a family or household members have a connection rooted in blood, marriage, family-standing, or a chosen romantic relationship.

**Scott v. Shay**, 928 A.2d 312, 315 (Pa. Super. 2007).

By construing "person related by … affinity" to include all definitions of a brother-in-law or sister-in-law, we give effect to the provisions of the statute in a way that promotes its purpose of preventing violence among people with a domestic, familial or romantic bond, past or present.

Appellant further contends the existence of a business relationship does not preclude the trial court from providing relief under the Act. We note, while the parties may be in the middle of a dispute concerning the family business, Appellee admits that the ongoing litigation concerns not only the family business, but the estate of a shared family member. **See** Appellee's Brief, at 2. We see no reason under the circumstances of this case to prevent Appellant from accessing the remedies under the PFA Act merely because one aspect of the hostility between the parties involves a business dispute.[1]

We conclude the trial court erred in determining Appellant lacked standing under the Act and that the relationship between Appellant and Appellee was not covered under the Act. The language and intent of the statute covers the relationship between Appellant and Appellee.[2]

---

[1] It is worth noting that Appellee does not work for the family business, nor does it appear he has any personal ties to the family business, outside of his wife having previously been employed at the business.

[2] While Appellee does not rely on this assertion in their argument, we note the death of Appellant's wife also does not preclude Appellant from receiving protection under the Act. The death of a spouse does not automatically change the status of a relation by affinity.

Order reversed and remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/31/2020